******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE DAVID B.*
(AC 38665)

Lavine, Prescott and Bear, Js.

*Argued May 9—officially released July 22, 2016***

(Appeal from Superior Court, judicial district of Fairfield, Juvenile Matters at Bridgeport, Maronich, J.)

*David E. Schneider*, *Jr.*, for the appellant (respondent mother).

*Joshua Michtom*, assistant public defender, for the appellee (substitute petitioner).

*Isidro Rueda*, for the minor child.

*Opinion*

PRESCOTT, J. The sole issue raised in the present appeal is whether the trial court, in adjudicating a petition to terminate parental rights originating in Probate Court, had the authority, following the death of the original petitioner and legal guardian of the minor child during the pendency of the proceedings, to grant a motion to substitute the child's newly appointed legal guardian as the petitioner in place of the decedent. We conclude that, under the unique set of circumstances presented here, such a substitution was both legally permissible and appropriate given that the newly appointed legal guardian is authorized to bring the termination action herself.

The respondent mother, Carmen C., appeals from the judgment of the trial court rendered following a trial de novo on an amended petition to terminate her parental rights as to her son, David B.[1] The respondent claims on appeal that the court's decision to terminate her parental rights should be reversed because, following the death of the original petitioner, Josefa G., who was David's maternal grandmother and his legal guardian, the court improperly granted a motion to substitute in Josefa's mother, Emma G., who, following Josefa's death, was duly appointed by the Probate Court as David's new legal guardian and as the executor of Josefa's estate.

The respondent makes two arguments in support of her claim on appeal. First, she argues that General Statutes § 52-599,[2] which, with limited exceptions, provides for the survival of an action or proceeding following the death of a party and authorizes the substitution of the executor or administrator of that party's estate, is inapplicable in proceedings on a petition to terminate parental rights. Accordingly, she argues that the court committed reversible error by allowing Emma's substitution in her capacity as the administrator of Josefa's estate.

Second, she asserts that motions to substitute parties are not authorized in juvenile court proceedings, citing Practice Book § 34a-1 (b),[3] and, therefore, the trial court should have treated the filing of the motion to substitute as "a nullity," and the case should have proceeded "as if the motion had never been filed." To be clear, the respondent has raised no challenge on appeal either to the factual or legal merits of the court's decision to terminate her parental rights other than the court's decision on the motion to substitute. We conclude, contrary to the respondent's arguments, that the court had ample authority to permit the matter to move forward and grant the motion to substitute, and, accordingly, we affirm the judgment of the court terminating the respondent's parental rights.

The record discloses the following relevant facts and

procedural history, which largely are undisputed. David was born in March, 2003. In September, 2003, the Department of Children and Families (department) obtained an ex parte order granting it temporary custody of David due to the respondent's ongoing mental health issues and concerns about domestic violence and substance abuse by David's father. David subsequently was adjudicated uncared for, committed to the care of the Commissioner of Children and Families, and placed with his grandmother, Josefa, who also had temporary custody of David's older sibling, Emmanuel.[4] David remained with Josefa until the commitment was revoked in 2005, at which time he was returned to the care of the respondent.

In 2008, in response to a call from David's grandfather, the police found David living with the respondent in horrendous conditions, in poor health, and malnourished.[5] The respondent consented to David being returned to Josefa's custody. At that time, Josefa's mother, Emma, also was living with Josefa.[6] Shortly after David's removal from her care, the respondent and David's father submitted an application to the Probate Court for the district of Bridgeport seeking to remove themselves voluntarily as David's guardians and to appoint Josefa as David's sole legal guardian. Although David's parents later had a change of heart with regard to relinquishing guardianship of David, after extensive and contentious litigation, on June 21, 2010, Josefa was appointed as David's sole legal guardian. Litigation between Josefa and David's parents nevertheless continued regarding parental visitation. The visitation rights of David's father eventually were terminated in May, 2011, and the respondent's visitation rights also were severely restricted.[7]

On April 12, 2013, Josefa, as David's sole legal guardian, filed a petition with the Probate Court to terminate the parental rights of the respondent and David's father on the ground that David previously had been adjudicated uncared for and his parents had failed to achieve a sufficient degree of personal rehabilitation to encourage a belief that, within a reasonable period of time, they could assume a responsible position in David's life. See General Statutes § 45a-717 (g) (2) (D) (i). In a statement attached to the petition, Josefa alleged that David's parents had failed to support or take care of him, that they could not keep him safe, and that Josefa could no longer tolerate the parents' threats and arguments.

The Probate Court, *Ganim, J.*, ordered an investigation by the department and received a report on March 12, 2014, in which the department recommended that termination of his parents' parental rights was in David's best interest. The court held a hearing on April 28, 2014, and, on October 20, 2014, issued a decree terminating both parents' parental rights on the grounds of failure

to rehabilitate and a lack of any parent-child relationship as set forth in § 45a-717 (g) (2) (C) and (D) (i). The father filed an appeal from the decree terminating his parental rights with the Superior Court on November 5, 2014. The respondent filed her own appeal on November 8, 2014. The appeals apparently were consolidated.

On December 4, 2014, during the pendency of the probate appeal, Josefa died. On December 15, 2014, the Probate Court appointed Emma as David's new legal guardian. It also appointed Emma as the administrator of Josefa's estate on December 22, 2014.

On February 23, 2015, the respondent and the father each filed a motion asking the court to "nonsuit" Josefa, in which they argued that a reply to their probate appeal had been due on December 11, 2014, but Josefa had passed away and her estate had not intervened. On March 17, 2015, Emma filed a handwritten motion asking the court to substitute her in for Josefa because she was now David's sole legal guardian. She did not assert in her motion that she was seeking substitution as the administrator of Josefa's estate. The respondent and David's father each filed objections to the motion for substitution. They argued that Emma is "only the legal guardian to [David]" and that she "has no legal authority to substitute in place of the decedent [Josefa]."

On April 14, 2015, the trial court, *Maronich, J.*, conducted a hearing on the motion to substitute. The arguments began in the morning with a discussion of whether the record reflected if Emma had been appointed as the administrator of Josefa's estate, as David's legal guardian, or both, and whether the parties were prepared to stipulate to any of those facts. The respondent's attorney argued that the respondent's objection to substitution was not based on whether Emma had been appointed as David's guardian, which he claimed was irrelevant to whether the court should permit substitution, but on whether "she has the authority to step into the shoes of the estate." Thus, the respondent appeared to take the position that the court only had the authority to grant substitution to a duly appointed representative for Josefa's estate. At no time during the argument on the motion to substitute did either the respondent's attorney or the attorney for the father argue or suggest that further action on the petition was no longer possible due to Josefa's death, or that the court lacked authority to substitute in a new party.

The court, contrary to the respondent's position, indicated that it believed it was important to establish whether Emma had been appointed as David's legal guardian. The court admonished the attorneys, indicating that it had expected them to come to court "prepared with all proper documentation or in the alternative, to be able to at least agree on a basic set

of facts." The court took a recess after instructing the lawyers to "get something definitive" from the Probate Court.

When the matter resumed in the afternoon, the court agreed to take judicial notice of the entire Probate Court file, which the court noted included a decree dated December 15, 2014, appointing Emma as David's guardian, and a December 22, 2014 decree appointing her as the administrator of Josefa's estate. The court asked the respondent's attorney if the court properly understood his argument to be that Emma "needs something more than just simple appointment as guardian" to support substitution. The respondent's attorney first seemed to acknowledge that his argument against the motion to substitute likely had been rendered moot by the court's decision to take judicial notice of the decree appointing Emma as administrator for Josefa's estate. He then responded that his understanding of the case law was that Emma could be substituted in for Josefa only on the basis of her position as administrator for the estate, and that her position as legal guardian was irrelevant. Counsel for the father agreed with that analysis.

When counsel for the minor child asked what case law the respondent's attorney was relying on in support of his argument, he indicated *Burton* v. *Browd*, 258 Conn. 566, 783 A.2d 457 (2001), in which our Supreme Court discusses § 52-599, Connecticut's so-called right of survival statute, and *In re Lisa N.*, Superior Court, judicial district of New Haven (July 28, 1992) (7 Conn. L. Rptr. 175), in which the court, *Downey, J.*, held that proceedings on a petition to terminate parental rights may survive the death of the petitioner provided that an executor or administrator is substituted in for the decedent in accordance with § 52-599.

Because counsel for the respondent was advancing the position that Judge Downey's decision was legally correct, and the trial court already had taken judicial notice that Emma had been appointed as the administrator for Josefa's estate on December 22, 2014, the court asked respondent's counsel if he was willing to concede that Emma could be substituted into the present action in place of Josefa. Counsel was not willing to make such a concession, however, explaining that he was "trying to preserve any appellate issues if there are any appellate issues."

After hearing from all the parties, the court issued an oral decision denying the motions for nonsuit, granting the motion to substitute, and overruling the objections of the respondent and David's father. The court reasoned that it was unnecessary for it to rely upon Judge Downey's decision in *In re Lisa N.* or to discuss whether it agreed with that court's analysis of § 52-599. According to the court, Emma had been appointed as David's legal guardian and, as such, was a proper party

to prosecute a petition to terminate parental rights in accordance with General Statutes § 45a-715. The court identified no other legal impediments to its exercising its discretion and allowing the substitution.

Emma filed a motion on September 22, 2015, seeking permission to amend the termination petition to include as an additional ground for termination that there was no ongoing parent-child relationship between David and his parents and to allow further time to establish such a relationship would be detrimental to David's best interests.[8] See General Statutes § 45a-717 (g) (2) (C). The court granted the motion over the objections of the parents. The court then conducted a trial de novo on the amended petition over the course of three days, beginning on October 21, 2015.[9]

Following trial, the court issued a written memorandum of decision on November 9, 2015, in which it granted the amended petition to terminate parental rights, concluding that the petitioner had proven by clear and convincing evidence both grounds alleged in the petition. Specifically, on the basis of its review of the evidence, the court found that neither the respondent nor David's father was fit to parent their son or even to engage in visitation, and there was no prospect that either would be able to do so at any time in the foreseeable future. The court further found that no positive emotional aspect of a parent-child relationship existed between David and either of his parents, and there was no reasonable prospect that that would change in the foreseeable future. Finally, the court found that termination was in David's best interest, and it reconfirmed Emma as David's legal guardian. This appeal followed.

The sole claim raised by the respondent in this appeal from the court's decision to terminate her parental rights is that the court improperly granted the motion for substitution filed by David's current legal guardian, Emma, following the death of the original petitioner and David's former legal guardian, Josefa. Although the respondent does not claim any error with the court's decision on the merits of the petition, she nevertheless takes the position for the first time on appeal that the proceedings should not have been permitted to move forward following Josefa's death, and that Emma should have been required to file a new petition with the Probate Court. The respondent advances two primary arguments in support of her claim. First, she argues, contrary to the position she staked out before the trial court, that substitution of Emma was not authorized under § 52-599. Second, she argues that our rules of practice do not authorize the use of motions to substitute in juvenile matters, and, therefore, the court lacked the authority to consider Emma's motion. We address each argument in turn after first setting forth our standard of review and legal principles that will aid our

consideration of the respondent's claim.

"The decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Internal quotation marks omitted.) *Youngman* v. *Schiavone*, 157 Conn. App. 55, 65, 115 A.3d 516 (2015). Whether, in a given situation, a court has the legal authority to consider a particular motion presents a question of law over which we exercise plenary review. See *Rome* v. *Album*, 73 Conn. App. 103, 108, 807 A.2d 1017 (2002). Furthermore, to the extent that it is necessary to construe or gauge the applicability of a statute or provision of our rules of practice, our review is also plenary. See id.; *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010).

Section 45a-715 (a) provides: "Any of the following persons may petition the Court of Probate to terminate parental rights of all persons who may have parental rights regarding any minor child or for the termination of parental rights of only one parent provided the application so states: (1) Either or both parents, including a parent who is a minor; (2) *the guardian of the child*; (3) the selectmen of any town having charge of any foundling child; (4) a duly authorized officer of any child care facility or child-placing agency or organization or any children's home or similar institution approved by the Commissioner of Children and Families; (5) a relative of the child if the parent or parents have abandoned or deserted the child; (6) the Commissioner of Children and Families, provided the custodial parent of such minor child has consented to the termination of parental rights and the child has not been committed to the commissioner, and no application for commitment has been made; provided in any case hereunder where the child with respect to whom the petition is brought has attained the age of twelve, the child shall join in the petition." (Emphasis added.) This statute, however, is silent regarding a court's authority to grant a motion to substitute a party once such a proceeding has been initiated.

"[T]he termination of parental rights is a most serious and sensitive judicial action. . . . A judgment terminating a parent's rights not only severs the emotional and physical ties between parent and child, but also absolves that parent of all future support obligations." (Citation omitted; internal quotation marks omitted.) *In re Bruce R.*, 234 Conn. 194, 200, 662 A.2d 107 (1995). "[C]hildren involved in termination proceedings have a strong interest in the speedy resolution of such proceedings, for regardless of their outcome, their final resolution promotes permanency in the children's fam-

ily relationships and stability in their lives. . . . The promotion of those objectives may be put at risk, if not fatally compromised, by injecting undue delay *for any purpose* into a termination proceeding. . . . Due to the psychological effects of prolonged termination proceedings on young children, time is of the essence . . . .” (Citation omitted; emphasis added; internal quotation mark omitted.) *In re Quamaine K., Jr.*, 164 Conn. App. 775, 794,      A.3d     , cert. denied, 321 Conn. 919,      A.3d     (2016).

The addition or substitution of parties to legal proceedings generally is favored in order to permit courts to make timely and complete determinations on behalf of parties with genuine interests in the outcome of controversies brought before them. See *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 553 n.21, 133 A.3d 140 (2016); *Poly-Pak Corp. of America* v. *Barrett*, 1 Conn. App. 99, 102, 468 A.2d 1260 (1983). To that end, our rules of practice contain multiple provisions authorizing courts to substitute parties in a variety of situations as the interests of justice require. See Practice Book §§ 9-18 through 9-22; see also General Statutes §§ 52-107 through 52-110.

Section § 52-599 also authorizes the court to grant a motion to substitute following the death of a party. See footnote 2 of this opinion. It was enacted in order to abrogate a common-law rule that the death of a sole plaintiff or defendant automatically caused an action to abate, meaning that the court no longer had jurisdiction over the action and its erasure from the docket was required. See *Burton* v. *Browd*, supra, 258 Conn. 570–71; *Barton* v. *New Haven*, 74 Conn. 729, 730, 52 A. 403 (1902). As our Supreme Court has recognized, “[o]vertechnical formal requirements have ever been a problem of the common law, leading [legislative bodies] at periodic intervals to enact statutes . . . which, in substance, told the courts to be reasonable in their search for technical perfection.” (Internal quotation marks omitted.) *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 399–400, 655 A.2d 759 (1995).

Section 52-599 expressly provides for the continuation of an action despite a party’s death and for the substitution of the executor or administrator of the deceased party’s estate in accordance with certain statutory parameters. The statute has been construed as being broadly applicable, and clearly reflects the general policy favoring the continuation and timely resolution of actions on the merits whenever possible. Our Supreme Court has described § 52-599 as having a “broad sweep” and that the *only* exceptions to its application “are those set forth in § 52-599 (c): (1) . . . any cause or right of action or . . . any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto, (2)

. . . any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants, or (3) . . . any civil action upon a penal statute." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Greenwich Catholic Elementary School System, Inc.*, 202 Conn. 609, 614, 522 A.2d 785 (1987). With these principles in mind, we turn now to the arguments raised by the respondent in support of her appeal from the judgment terminating her parental rights.

I

The respondent first argues that the court improperly allowed substitution of Emma in her capacity as administrator of Josefa's estate because § 52-599 is inapplicable in a proceeding to terminate parental rights. We are not persuaded by this argument for the following three reasons: (1) the court granted substitution to Emma in her capacity as David's legal guardian, not as administrator in accordance with § 52-599; (2) the respondent, and not the court, was the proponent for the applicability of § 52-599 in resolving the motion to substitute and should not be permitted to adopt a contrary position on appeal; and (3) we agree with the court that it is unnecessary to determine the applicability of § 52-599 on the present facts because it otherwise had the authority to grant the motion to substitute.

First, it is a mischaracterization of the court's ruling to state that the court allowed substitution of Emma in her capacity as the administrator of Josefa's estate. Emma's handwritten motion clearly asked the court to grant her substitution in her capacity as David's legal guardian, not as administrator. It was the respondent and David's father who opposed substitution on the ground that Emma's status as guardian was insufficient to permit substitution, and they tacitly invoked § 52-599 by suggesting in their motions for nonsuit that the estate, presumably meaning a representative of the estate, properly should have intervened to answer the appeal. The respondent also raised § 52-599 at the hearing on the motion to substitute by citing to case law that addressed that statute and, in fact, appeared to advocate for the court's application of the statute in deciding the motion to substitute.

The court, however, did not rely upon § 52-599 as the source of its authority to make the substitution. It expressly stated that it was not deciding whether § 52-599 generally was applicable. Instead, the court theorized that it had the authority to substitute in Emma for Josefa, not because Emma was the administrator of Josefa's estate, but because Emma was now a party with genuine interest in the outcome of the pending litigation, having obtained the authority as David's newly appointed legal guardian to prosecute a petition to terminate parental rights on his behalf pursuant to

§ 45a-715 (a). Accordingly, the court determined that Emma was the proper party to stand in the shoes of Josefa, David's prior guardian. Because the court did not rely on § 52-599 in rendering the judgment on appeal, the respondent's contention that it did so improperly is wholly unavailing.

Second, to the extent that § 52-599 was injected as an issue in this case, it was the attorneys for the respondent and David's father who relied upon and urged the court at the hearing on the motion to substitute to apply § 52-599 in deciding the motion. The respondent, therefore, should not be heard on appeal with respect to a claim now arguing against the statute's applicability. It is a well settled principle of appellate review that a party cannot invite a trial court to take a position and then, after the court has adopted that position, claim error. This is because, if we were to endorse such behavior, we effectively would be sanctioning trial by ambush, which we have repeatedly stated we will not allow.

"[A] party cannot take a path at trial and change tactics on appeal. . . . This court routinely has held that it will not afford review of claims of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests on principles of fairness, both to the trial court and to the opposing party." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Gorelick* v. *Montanaro*, 119 Conn. App. 785, 796–97, 990 A.2d 371 (2010).

In both her written opposition to the motion for substitution and at the hearing on that motion, the respondent took the position that Emma could not be substituted into the action solely by virtue of her appointment as David's legal guardian, and that she needed first to be appointed as the administrator of Josefa's estate. After it was determined at the hearing by judicial admission that Emma also had been appointed as the administrator of Josefa's estate, the respondent all but conceded that its argument against substitution was moot. The respondent never argued in her written opposition or at the hearing on the motion for substitution that she believed that the termination proceedings could not survive the death of Josefa, as she now contends on appeal. To the contrary, as authority for the argument she was advancing at the hearing, the respondent cited favorably to Judge Downey's decision in *In re Lisa N.*, supra, 7 Conn. L. Rptr. 176, in which Judge Downey held, in reliance on § 52-599, that

termination proceedings do survive the death of a petitioner, and that adjudication of the petition may proceed after the administrator or the executor of the deceased petitioner has been substituted in for the decedent.

As we already have explained, the court's analysis did not involve application of § 52-599, and, therefore, no actual error was induced by the respondent's actions. The underlying principle that a party should be estopped from claiming error on appeal on the basis of a legal position directly in opposition to one advanced by the party before the trial court nonetheless remains apt, and its application here further countenances our decision to reject the respondent's argument regarding § 52-599.

Third, and most significantly, we agree with the court that it was proper to substitute Emma as the petitioner because of her position as David's legal guardian, and, therefore, it is unnecessary to determine at this time whether a court properly could grant substitution to someone who ordinarily would not have standing to prosecute a petition but who was an executor or administrator of the estate of a deceased petitioner and, thus, potentially subject to § 52-599. As counsel for Emma readily admitted at oral argument before this court, application of § 52-599 to the facts of this case would not be a precise jurisprudential fit. By its express language, the applicability of § 52-599 reasonably can be viewed as limited to those civil cases in which, despite a party's death, the continuation of the litigation arguably could benefit the decedent's estate, typically in some pecuniary manner, such that permitting substitution of a representative for the decedent's estate would preserve both the adversarial nature of the proceedings and allow the action to move forward to a resolution with an interested party on each side of the litigation. Section 52-599, however, also appears to evince a somewhat broader policy consideration that can help to inform our resolution of the issue now before us. Namely, it represents a preference for the survival of actions over the common-law rule of abatement per se; see *Craig* v. *Wagner*, 88 Conn. 100, 103, 89 A. 916 (1914); and provides for the timely substitution of a party holding an interest in the litigation that is sufficiently equivalent in nature to the decedent to permit the action to be tried to a final resolution.

A petition to terminate parental rights is not a typical civil action. Like a neglect petition, it is sui generis. See *In re Allison G.*, 276 Conn. 146, 158, 883 A.2d 1226 (2005) (stating neglect petition is sui generis). It is not a creature of the common law, but a statutory action. It is, therefore, unclear whether any vestige of the old common-law rule requiring the abatement of an action following the death of a solitary party proponent would even apply to a termination proceeding.

As previously indicated, § 45a-715 (a) sets forth a list of persons who may petition the Probate Court to terminate parental rights, but is silent regarding the substitution of parties once a petition has been brought. It is important to remember, however, that whoever initiates termination proceedings does so on behalf of the minor child. Although § 45a-715 (a) specifically includes the guardian of a child amongst those allowed to file a petition with the Probate Court, it does not mention the executor or administrator of a deceased guardian as a party authorized to prosecute a petition. Because § 52-599 only directly addresses the substitution of a representative of a decedent's estate, and such a representative is not authorized by statute to prosecute a petition to terminate parental rights, there is an incongruence in attempting to directly apply § 52-599 to the facts of the present case, and we do not purport to do so. Nevertheless, if we consider the more general policy implications underlying § 52-599 in conjunction with other statutory authority granted to courts acting on juvenile matters, we conclude that the court in the present case had sufficient authority to grant substitution.

The general authority of the Superior Court to act in juvenile matters is set forth in General Statutes § 46b-121, titled, " 'Juvenile matters' defined. Authority of court." Subsection (a) (1) of § 46b-121 provides that juvenile matters include "appeals from probate concerning adoption, termination of parental rights and removal of a parent as guardian." Subsection (b) (1) of § 46b-121 provides in relevant part: "In juvenile matters, the Superior Court shall have authority *to make and enforce such orders* directed to parents . . . guardians, custodians or other adult persons owing some legal duty to a child or youth therein, *as the court deems necessary or appropriate* to secure the welfare, protection, proper care and suitable support of a child or youth subject to the court's jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. . . ." (Emphasis added.) The court's authority to make orders directed at persons owing a legal duty to a child logically would extend to exercising that authority at the request of a party through a proper motion. Here, by granting Emma's motion, the court effectively made an order directed at Emma, David's guardian, to be substituted as the petitioner in place of Josefa.

The broad statutory grant of authority found in § 46b-121 is, in our view, sufficient to encompass the authority to order the substitution of parties if the court deems that a substitution is necessary to protect the welfare of a child. Consideration of the broad scope of this authority in light of the broader policy considerations underlying § 52-599, which clearly favors the continuation of an action despite the death of a party provided

that the purpose of the action is not defeated, supports the proposition that if the petitioner in a termination of parental rights proceeding dies prior to a final resolution of the petition, the action should be permitted to move forward following the timely substitution of a party who, on his or her own, has the authority to bring such a petition on behalf of the minor child, including a newly appointed guardian.[10]

Emma, as David's guardian, had standing to initiate her own action to terminate the respondent's parental rights on the basis of the exact same facts and legal authority raised in Josefa's petition. Requiring her to file a new petition with the Probate Court would have resulted in considerable and unnecessary delay in attaining permanency for David. Requiring such a duplicative procedure rather than allowing substitution into the existing action would undermine our stated policy to resolve termination proceedings in an expeditious fashion. See *In re Quamaine K., Jr.*, supra, 164 Conn. App. 794. The respondent's position is made that much more untenable in the present case due to the fact that the respondent has not challenged any aspect of the merits of the court's decision to terminate her parental rights. We are persuaded, without directly applying § 52-599 or determining its applicability under different facts, that a termination of parental rights action can proceed forward following the death of a sole petitioner provided that someone with the statutory authority to stand in the petitioner's shoes—i.e. someone authorized under § 45a-715 (a) to file a petition to terminate parental rights on behalf of the same child—is seasonably substituted into the proceedings in place of the decedent. For the foregoing reasons, we reject the respondent's argument that the court incorrectly applied § 52-599 in this case.

## II

The respondent also argues that motions to substitute parties are not authorized for use in juvenile court proceedings. According to the respondent, the court should have treated the filing of the motion to substitute "as a nullity" and granted the motions for nonsuit. We conclude that the respondent failed to properly preserve this argument for appellate review and, even if she had, the argument lacks merit.

As we have already stated, "[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *State* v. *Santana*, 313 Conn. 461, 466–67, 97 A.3d 963 (2014); see also Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial").

Although the respondent and David's father each filed oppositions to the motion to substitute, neither argued as a basis for denying the motion that it was procedurally improper or that, because this was a juvenile matter, the court was not authorized to consider a motion to substitute. Those arguments also were not made by the parties at the hearing on the motion to substitute. Simply opposing the motion to substitute on the ground that Emma's role as legal guardian was insufficient to permit her to be substituted in for Josefa did not preserve for appellate review any and all arguments that the respondent could have raised before the court in opposition but failed to do. See *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–21, 99 A.3d 1079 (2014). Accordingly, because the respondent's argument was never considered or decided by the trial court, it is unpreserved.[11]

The judgment is affirmed.

In this opinion LAVINE, J. concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 22, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In addition to terminating the parental rights of the respondent mother, the court also terminated the parental rights of David's father, who also had appealed from the underlying probate decree terminating his parental rights. The father has not appealed from the judgment of the trial court and, therefore, we refer to the mother as the respondent throughout this opinion.

[2] General Statutes § 52-599 provides: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed.

"(c) The provisions of this section shall not apply: (1) To any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto, (2) to any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants, or (3) to any civil action upon a penal statute."

[3] Practice Book § 34a-1 provides in relevant part: "(a) Except as otherwise provided, the sections in chapters 1 through 7 shall apply to juvenile matters in the superior court as defined by General Statutes § 46b-121

"(b) The provisions of Sections 8-2, 9-5, 9-22, 10-12 (a) and (c), 10-13, 10-14, 10-17, 10-18, 10-29, 10-62, 11-4, 11-5, 11-6, 11-7, 11-8, 11-10, 11-11, 11-12, 11-13, 12-1, 12-2, 12-3, 13-1 through 13-11 inclusive, 13-14, 13-16, 13-21 through 13-32 inclusive, subject to Section 34a-20, 15-3, 15-8, 17-4, and 17-21 of the rules of practice shall apply to juvenile matters in the civil session as defined by General Statutes § 46b-121. . . ."

[4] Emmanuel had been removed from the respondent's care while she was pregnant with David.

[5] The court stated in its memorandum of decision that "[w]hen the officers forced the door open they found [the respondent] and [David] living in

squalid conditions. Dirty clothes and garbage were strewn about, and the shades were tightly drawn. Half empty prescription bottles lay on the floor amidst the refuse. The apartment was infested with roaches and bedbugs. [The respondent] was found in her room where she admitted to having spent the past three weeks smoking and vomiting. So severely swollen was [the respondent's] stomach that the EMTs believed she was pregnant. [David], now almost five years old, was found malnourished and so severely covered with insect bites that the EMTs believed he was suffering from chicken pox. [David's] behavior displayed marked regression. He was no longer walking, but crawling on all fours. He was visibly shaking and could barely talk, instead communicating with grunts and screams. He was in pain from a mouthful of rotted teeth. He later talked of eating garbage off the floor out of hunger. Both [David] and [the respondent] were transported to a hospital for emergency medical attention."

[6] Josefa also had adopted David's younger cousin, Jasmine, to whom David became bonded as a sister.

[7] With respect to the dispute over visitation rights, the court made the following observations: Josefa had tried to maintain a liberal policy of visitation from the time David was placed with her, but visitation sessions quickly became adversarial. The respondent tried to pick fights with Josefa in front of David, and the father used his sessions to interrogate David about Josefa's care. The Probate Court initially had ordered some overnight supervised visits with the father at his mother's home and also ordered supervised afternoon visitations at Josefa's home for the father once a week and on a more flexible schedule for the respondent. Those visits, however, did not go well, and David became "fearful, anxious and nervous, manifested by shaking, vomiting, fevers and weight loss." David reported to the department "that his father told him Emmanuel was not his 'real brother' and that his father berated him for talking to [the department]. [David] also reported that his father called grandmother Josefa a 'monkey' because of her dark complexion." The Probate Court suspended all visitations with both parents on February 7, 2011, until further order of the court. Although the father's visitation rights eventually were terminated outright, visitation between David and the respondent resumed, although limited to two hours on Saturday afternoons to be extended at the sole discretion of Josefa. Both parents continued to file numerous motions regarding visitation, both with the Probate Court and in the Superior Court. The respondent stopped exercising her court-ordered supervised visitation in early 2013, telling the department that she did not get along with Josefa and wanted nothing to do with her.

[8] As previously indicated, the Probate Court had granted termination of parental rights on this additional ground, although it was not expressly alleged in the original petition filed by Josefa. Again, the respondent has raised no issue regarding the amendment of the petition or challenged the grounds on which the petition was granted by the trial court.

[9] As the court informed the parties at the hearing on the motion to substitute, because the underlying Probate Court petition was not heard on the record as defined in General Statutes § 45a-186a, the trial court was obligated to conduct a trial de novo prior to ruling on the merits of the petition. See *Baskin's Appeal from Probate*, 194 Conn. 635, 641, 484 A.2d 934 (1984) (recognizing that "an appeal from probate is a de novo proceeding in which the Superior Court is not limited to the claims raised in the Probate Court").

[10] We respectfully disagree with the concurring opinion's assertion that our reliance on §§ 52-599 or 46b-121 is dicta. In our view, our consideration of these provisions and the policies that underlie them is necessary in light of the lack of a specific statutory or Practice Book provision that squarely authorizes the Superior Court to grant a motion to substitute a petitioner in this type of proceeding. Indeed, the concurring opinion does not cite to any authority that explicitly authorizes the court to grant a motion to substitute. In the absence of such explicit authority, we conclude that it is both appropriate and necessary to draw on other legal authority from which such power can be inferred.

Furthermore, we disagree with the concurring opinion's suggestion that we have reached a legal issue that the parties did not have a full and fair opportunity to address. In resolving a claim raised by the parties, we are not required to constrain our analysis to the law relied on by the parties. See *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 635 n.7, 126 A.3d 558 (2015); see also *State* v. *Santiago*, 319 Conn. 935, 939–40, 125 A.3d 520 (2015) ("when [a case] is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction

of governing law" [internal quotation marks omitted]). In the present case, the claim raised by the respondent is that the court lacked authority to grant a motion to substitute the new guardian as the petitioner. The respondent's failure to discuss all relevant sources of authority does not preclude us from considering them. Indeed, we are obligated to do so in resolving her claim.

[11] Even if the respondent had preserved this argument for review, it is unlikely she would have prevailed on its merits. In support of her argument that the court lacked authority to grant the motion to substitute, the respondent refers us to Practice Book § 34a-1. See footnote 3 of this opinion. Practice Book § 34a-1 sets forth the provisions of our rules of practice that are applicable "in juvenile matters," which includes "appeals from probate concerning . . . termination of parental rights" such as the present matter. See General Statutes § 46b-121. The respondent contends that Emma's motion to substitute was filed pursuant to Practice Book § 9-20, and that because that section is not one of the provisions set forth in Practice Book § 34a-1, the court lacked authority to hear the motion. That argument is unpersuasive, however, for several reasons. First, Practice Book § 34a-1 contains no language suggesting that the enumerated provisions are an exhaustive list or that a court hearing a juvenile matter otherwise lacks authority to apply or rely upon other provisions if required for the due administration of justice. Second, Practice Book § 9-20 was not cited in Emma's motion to substitute nor was it invoked at the hearing on the motion. Third, Practice Book § 9-20 is inapposite to the present situation because it relates to substitution in an action commenced in the name of a wrong person, which is not the issue here. Fourth, Practice Book § 9-22, which also addresses generally the addition and substitution of parties, is one of the provisions included in Practice Book § 34a-1 as applicable to juvenile matters. Fifth, and finally, as we already have discussed with respect to the respondent's first argument, General Statutes § 46b-121 (b) (1) gives broad authority to judges in juvenile matters to make any order that "the court deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child . . . ."

---